Vincent A. Gorski (263487)
**THE GORSKI FIRM, APC**
1430 Truxtun Avenue, Fifth Floor
Bakersfield, California 93301-5246
Telephone: (661) 952-9740   Fax: (661) 952-9741

Attorneys for Plaintiff
Tejwant S. Bal

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| TEJWANT S. BAL,  INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>                    PLAINTIFF,<br><br>                    VERSUS<br><br>NEW PENN FINANCIAL, LLC DOING BUSINESS AS SHELLPOINT MORTGAGE SERVICING;<br><br>AND DOES 1 THROUGH 100, INCLUSIVE,<br><br>                    DEFENDANTS. | CASE NUMBER:<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT, TEMPORARY RESTRAINING ORDER,  INJUNCTIVE RELIEF, AND MONETARY DAMAGES**<br><br>**COUNTS**<br><br>**1 :** FRAUD – INTENTIONAL<br>**2 :** FRAUD – INTENTIONAL (CA CLASS)<br>**3 :** EQUITTABLE ESTOPPEL<br>**4 :** WRONGFUL FORECLOSURE CALIFORNIA CIVIL CODE § 2923.6(C)<br>**5 :** BREACH OF CONTRACT AND BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING – DEED OF TRUST<br>**6 :** UNJUST ENRICHMENT<br>**7 :** NEGLIGENCE<br>**8 :** VIOLATION OF UNLAWFUL, UNFAIR OR DECEPTIVE PRACTICES CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

## I.      INTRODUCTION

Plaintiff Tejwant S. Bal (hereinafter "Plaintiff"), by its undersigned attorney, brings this class action complaint ("Complaint") against New Penn Financial, LLC doing business as Shellpoint Mortgage Servicing (hereinafter "Shellpoint").   Plaintiff's allegations are based upon knowledge related to actions against Plaintiff by Shellpoint and upon information and belief as to all other matters and against all other similarly situated. Plaintiff's information and belief is based upon, among other things, the investigation undertaken by Plaintiff's attorney, which has included, without limitation: (a) interview of witnesses; (b) review of Shellpoint's published materials and information available on the internet; (c) analysis of public records and documents; (d) news magazines and other publications concerning the conduct alleged herein.   Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery and that such discovery will aid the public well being of all similarly situated individuals.

## II.     DEMAND FOR JURY TRIAL

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and hereby demands, a trial by jury.

## III.    NATURE OF THE ACTION

1.      Plaintiff brings this class action against Shellpoint for breach of implied covenant of good faith and fair dealing, equitable estoppel, including breach of contract, unjust enrichment, and for unlawful, unfair, or fraudulent business practices in violation of California Business & Professions Code 17200, et. seq.

2.      Defendants have engaged in a common business practice and have a policy of improperly inducting Plaintiff and members of the Class into believing that Shellpoint is engaging in providing loss mitigation options, including loan modifications under the Home Affordable Modification Program ("HAMP") and other programs.   Shellpoint has misrepresented and / or neglected to comply with federal and state law related to the submission, the processing, the administration, the determination, and competition of loss

**CLASS ACTION COMPLAINT**

mitigation programs, namely loan modifications, and in so doing, Shellpoint has engaged in the business practice with the intention of collecting and retaining substantial late fees, interest, penalties, and other advance charged to Plaintiff without justification by Shellpoint.  Furthermore, in so harming Plaintiff, Shellpoint has failed to comply with non-judicial foreclosure laws while representing Shellpoint has complied in order to effect foreclosures.

3.      Plaintiff and Class members have or have had a residential mortgaged serviced by Shellpoint for which they sought loss mitigation assistance with, including loan modifications under HAMP.  At the time of the loan modification requests, Plaintiff and Class members have fully complied with all requirements under federal and state law, have submitted complete and signed loan modification packets ("Modification Packet") with all supporting documentation or otherwise provide all supplemental documentation timely.  In many cases, Plaintiff and Class members repeated this submission process more than once.

4.      Plaintiff and Class members have either been wrongfully denied for failure to submit a complete Modification Packet, wrongfully denied for failure to submit supplement documents to the Modification Packet, wrongfully denied a prompt determination of eligibility, or wrongfully subjected to foreclosure proceedings while a Modification Packet was under review by Shellpoint.

5.      Shellpoint's policy and practice of misleading and / or negligent handling of loss mitigation programs, the loan modifications, caused Plaintiff and Class members substantial harm and Shellpoint violated the terms of the promissory notes, deeds of trusts, and other related mortgage agreements (collectively "Loan Agreements") resulting in unnecessary fees, interest, penalties, and costs.

6.      Shellpoint created a frustrating process that should take 30 days after a Modification Packet is submitted for a determination to be rendered; however, the process was spread over many months and years before Shellpoint would proceed with foreclosure activity despite no determination being made on the Modification Packet submitted.

**CLASS ACTION COMPLAINT**

7.      It is Shellpoint's custom and practice to deceive Plaintiff and Class members by making them believe that it would engage in good faith and fair dealing in the review of the Modification Packet and comply with the state and federal law.

8.      Shellpoint's policy and practices of misleading and / or neglecting Plaintiff and the Class members with the loss mitigation requirements under federal or state law, and under the Loan Agreements constitute an unlawful, unfair, and fraudulent business practice under California law.  Defendant's unlawful, unfair, and fraudulent business practices have deceived and are likely to continue to deceive borrowers whose loans are serviced by Shellpoint.

9.      Accordingly, Plaintiff, on Plaintiff's behalf, and as representative to the Class, seek to recover compensatory damages resulting from Shellpoint's wrongdoings, as well as restitution in the amount of fees, interest, and related penalties that Shellpoint has collected and retained as a result of Shellpoint's unlawful, unfair, and fraudulent business practices.  Plaintiffs also seek injunctive relief to prevent Defendants from continuing to engage in the unlawful, unfair, and fraudulent business practices described herein.

**IV.      JURISDICTION AND VENUE**

10.     This Court has diversity subject-matter jurisdiction over this class action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 ("CAFA"), which, inter alia, amends 28 United States Code § 1332, at new subsection (d), conferring federal jurisdiction over class actions where, as here: (a) there are 100 or more members in the proposed Class; (b) at least some members of the proposed class have a different citizenship from Defendants; and (c) the claims of the proposed Class members exceed the sum or value of five million dollars ($5,000,000) in the aggregate. *See* 28 U.S.C. § 1332(d)(2) and (6).

11.     This Court also has supplemental jurisdiction over the pendant state law claims because they form a part of the same case or controversy under Article III of the United States Constitution, pursuant to 28 United State Code § 1367.

12.     The Court has personal jurisdiction over the parties because Plaintiff submits to the jurisdiction of the Court, Defendant Shellpoint has various places of business in the State of

**CLASS ACTION COMPLAINT**

California, and by virtue of the fact that Defendant Shellpoint systematically and continually conducts business throughout the State.

13.     Venue is proper because Defendant Shellpoint has a principal place of business is in this District and Southern Region, with at least two offices located in this District, and one office in this Southern Region.

14.     Venue is proper in the Central District of California pursuant to California Business & Professions Code § 17203, which allows any person who has engaged in unfair competition to be enjoined in "any court of competent jurisdiction."

## V.     PARTIES

15.     Plaintiff is now, and at all times mentioned herein, an individual residing at 14406 Raphael Avenue, Bakersfield, California 93306-7786, in the County of Kern and in the State of California.  Plaintiff's mortgage is serviced by Defendant Shellpoint.

16.     At all relevant times, Defendant Shellpoint was the mortgage servicer and successor to all obligations of Resurgent Capital Services LP doing business as Resurgent Mortgage Servicing.  Defendant Shellpoint acquired Resurgent Mortgage Servicing on or about October 2013.   Defendant New Penn Financial, LLC doing business as Shellpoint Mortgage Servicing is a Delaware corporation, and the fictitious name is registered with the Pennsylvania Department of State.   Defendant Shellpoint is a diversified mortgage servicing company doing across the nation with offices in at least 21 states, including 5 in California.  In the Southern Region of this District, the office is located in Irvine, California.  Defendant Shellpoint's servicing portfolio was expected to exceed $13 billion dollars by the end of 2013.

17.     Plaintiff is ignorant of the true identity and capacity of Defendants designated as Does 1 through 100, but will amend the Complaint when their identities have been ascertained according to proof within the time permitted.  However, Plaintiff alleges on information and belief, that each and every Doe Defendant is in some manner responsible for the acts and conduct of the other Defendants, and were, and are, responsible for the injuries, damages, and harm incurred by Plaintiff.  Plaintiff further alleges on information and belief that each such

**CLASS ACTION COMPLAINT**

designated Defendant acted, and acts, as the authorized agent, representative, associate, and co-conspirator of the other Defendants in doing the things alleged herein.

18.     Whenever reference is made in this Complaint to any act of any Defendants, that allegation shall mean that each Defendant acted individually and jointly with the other Defendants.

19.     Any allegation about acts of any corporate or other business Defendants means that the corporation or other business did the acts alleged through its officers, directors, employees, agents, and/or representatives while they were acting within the actual or ostensible scope of their authority.

20.     At all relevant times, each Defendants committed the acts, caused or directed others to commit the acts, or permitted others to commit the acts alleged in this Complaint. Additionally, some or all of the Defendants acted as the agent of the other Defendants, and all of the Defendants acted within the scope of their agency if acting as an agent of the other.

21.     At all relevant times, each Defendant knew or realized that the other Defendants were engaging in or planned to engage in the violations of law alleged in this Complaint. Knowing or realizing that the other Defendants were engaging in or planning to engage in unlawful conduct, each Defendant nevertheless facilitated the commission of those unlawful acts. Each Defendant intended to and did encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted the other Defendants in the unlawful conduct.

## VI.     CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action, on behalf of themselves and all others similarly situated, as a class action under Rule 23 of the Federal Rules of Civil Procedure.

23.     The classes Plaintiffs seek to represent (collectively, the "Class" or "Class Members") are defined as follows:

All residents of the United States of America (excluding California) who had a loan serviced by Defendant Shellpoint, including Defendant Shellpoint's successor servicing obligations it acquired from Resurgent Mortgage Servicing, who were mislead and / or neglected with the failure of Defendant Shellpoint's to comply with loss mitigation requirements, including loan modifications, under federal or state law, and under the

**CLASS ACTION COMPLAINT**

Loan Agreements causing Plaintiff and the Class Members to incur unjustified fees, interest, inspection fees, costs, penalties, corporate advances, or otherwise be subjected to non-judicial foreclosure activity in violation of applicable laws (the "National Class").

All residents of the California who had a loan serviced by Defendant Shellpoint, including Defendant Shellpoint's successor servicing obligations it acquired from Resurgent Mortgage Servicing, who were mislead and / or neglected with the failure of Defendant Shellpoint's to comply with loss mitigation requirements, including loan modifications, under federal or state law, and under the Loan Agreements causing Plaintiff and the Class Members to incur unjustified fees, interest, inspection fees, costs, penalties, corporate advances, or otherwise be subjected to non-judicial foreclosure activity in violation of applicable laws (the "California Class").

24. Plaintiff reserves the right to amend the Class definitions if discovery and further investigation reveals that the Class should be expanded, divided, or otherwise modified.

25. Plaintiffs reserve the right to establish sub-classes as appropriate.

26. This action is brought and properly may be maintained as a class action under the provisions of Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(1), (b)(2) or (b)(3), and satisfies the requirements thereof. As used herein, the term "Class Members" shall mean and refer to the members of the Class.

27. <u>Community of Interest:</u> There is a well-defined community of interest among members of the Class, and the disposition of the claims of these members of the Class in a single action will provide substantial benefits to all parties and to the Court.

28. <u>Numerosity:</u> While the exact number of members of the Class is unknown to Plaintiffs at this time and can only be determined by appropriate discovery, membership in the Class is ascertainable based upon the records maintained by Defendants. At this time, Plaintiffs are informed and believe that the Class includes hundreds of thousands of members. Therefore, the Class is sufficiently numerous that joinder of all members of the Class in a single action is impracticable under Federal Rule of Civil Procedure Rule 23(a)(1), and the resolution of their claims through the procedure of a class action will be of benefit to the parties and the Court.

29. <u>Ascertainablity:</u> Names and addresses of members of the Class are available from Defendants' records. Notice can be provided to the members of the Class through direct

**CLASS ACTION COMPLAINT**

mailing, publication, or otherwise using techniques and a form of notice similar to those customarily used in consumer class actions arising under California state law and federal law.

30. <u>Typicality:</u> Plaintiffs' claims are typical of the claims of the other members of the Class which they seek to represent under Federal Rule of Civil Procedure 23 (a)(3) because each Plaintiff and each member of the Class has been subjected to the same deceptive and improper practices and has been damaged in the same manner thereby.

31. <u>Adequacy:</u> Plaintiffs will fairly and adequately represent and protect the interests of the Class as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiffs are adequate representatives of the Class, because they have no interests which are adverse to the interests of the members of the Class. Plaintiffs are committed to the vigorous prosecution of this action and, to that end; Plaintiffs have retained counsels (including Of Counsel and association with other class action counsel) who are competent and experienced in handling class action litigation on behalf of consumers.

32. <u>Superiority:</u> A class action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because:

    a. The expense and burden of individual litigation make it economically unfeasible for members of the Class to seek to redress their claims other than through the procedure of a class action.

    b. If separate actions were brought by individual members of the Class, the resulting duplicity of lawsuits would cause members to seek to redress their claims other than through the procedure of a class action; and

    c. Absent a class action, Defendants likely would retain the benefits of their wrongdoing, and there would be a failure of justice.

33. Common questions of law and fact exist as to the members of the Class, as required by Federal Rule of Civil Procedure 23(a)(2), and predominate over any questions which affect individual members of the Class within the meaning of Federal Rule of Civil Procedure 23(b)(3).

**CLASS ACTION COMPLAINT**

34. The common questions of fact include, but are not limited to, the following:

    a. Whether Defendant Shellpoint engaged in unlawful, unfair, misleading, or deceptive business acts or practices in violation of California Business & Professions Code § 17200 et seq,;

    b. Whether Defendant Shellpoint engaged in misleading and / or neglecting Plaintiff and Class Members in loss mitigation requirements, including loan modifications, under federal or state law, and under the Loan Agreements causing Plaintiff and the Class Members to incur unjustified fees, interest, inspection fees, costs, penalties, corporate advances, or otherwise be subjected to non-judicial foreclosure activity in violation of applicable laws.

    c. Whether Plaintiffs and members of the Class are entitled to an award of reasonable attorneys' fees, pre-judgment interest, and cost of this suit.

35. In the alternative, this action is certifiable under the provisions of Federal Rule of Civil Procedure 23(b)(1) and/or 23(b)(2) because:

    a. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendant Shellpoint;

    b. The prosecution of separate actions by individual members of the Class would create a risk of adjudications as to them which would, as a practical matter, be dispositive of the interests of the other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

    c. Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole and necessitating that any such relief be extended to members of the Class on a mandatory, class-wide basis.

**CLASS ACTION COMPLAINT**

36.     Plaintiff is not aware of any difficulty which will be encountered in the management of this litigation which should preclude its maintenance as a class action

### VII.     SUBSTANTIVE ALLEGATIONS

37.     As part of the Troubled Asset Relief Program ("TARP"), 12 United States Code § 5211. TARP authorized the Secretary of the Treasury to establish means necessary to minimize foreclosures.  Consistent with the TARP mandate, the Treasury Department implemented the Home Affordable Modification Program ("HAMP") – a detailed program designed to stem the foreclosure crisis by providing affordable mortgage loan modifications and other alternatives to foreclosure to eligible borrowers.  Companies that accepted money under TARP are subject to mandatory inclusion in HAMP as are certain classes of loans, namely those held by Federal National Mortgage Association ("Fannie Mae") and Federal Home Loan Mortgage Corporation ("Freddie Mac").

38.     Defendant Shellpoint provides on its website[1] HAMP information, including the eligibility requirements, and a request that borrowers contact Defendant Shellpoint with certain documents to start the loss mitigation process, including a facsimile number, to send said information.

39.     As such, Defendant Shellpoint represents to the Plaintiff and Class Members that it will comply with the HAMP requirements and to perform loan modification determination in good faith in accordance with the guidelines issued by the Treasury Department.  The guidelines are generally set out in the Making Home Affordable Program Handbook for Servicers of Non-GSE Mortgages[2] (the "Handbook"), as amended from time to time.

40.     The Handbook at Section 3.1.1 provides in pertinent part:

A servicer may not refer any loan to foreclosure or conduct a scheduled foreclosure sale unless and until at least one of the following circumstances

---

[1] https://www.shellpointmtg.com/loss-mitigation-options#LoanModification

[2] https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/mhahandbook_42.pdf

THE GORSKI FIRM
A PROFESSIONAL LAW CORPORATION

exists:  The borrower is evaluated for HAMP and is determined to be ineligible for the program; ...


In each case under this Complaint for Plaintiff and Class Members, no exception applied that would allow the Defendant Shellpoint [servicer] to proceed with foreclosure activity and incur additional fees and costs.

41.     In fact, under the Handbook, Section 4.6, 4.6 Review of Initial Package, it provides in pertinent part:


> Within 30 calendar days from the date an Initial Package is received, the servicer must review the documentation provided by the borrower and if the servicer has sufficient documentation to make a determination, the servicer must evaluate the borrower's eligibility for HAMP and either:
> ▪   Send the borrower a TPP Notice (see Section 8.1); or
> ▪   Make a determination that the borrower is not eligible for HAMP and communicate this determination to the borrower in accordance with the guidance in Section 2.3.2.


In each case under this Complaint for Plaintiff and Class Members, Defendant Shellpoint [servicer] failed to make the proper determination of eligibility, made it incorrectly, or if made, failed to comply with subsequent conditions.

42.     Defendant Shellpoint was required to, but failed to:

a.  identify loans that are subject to modification under the HAMP program, both through its own review and in response to requests for modification from individual homeowners;

b.  collect financial and other personal information from the homeowners to evaluate whether the homeowner is eligible for a loan modification under HAMP;

c.  institute a modified loan with a reduced payment amount as per a mandated formula, that is effective for a three-month trial period for borrowers that are eligible for a modification; and

d.  provide a permanently modified loan to those homeowners who comply with the requirements during the trial period. Whether the homeowner qualifies for a modification or not, participating servicers are also required to provide written notices to every mortgage borrower that has been evaluated for a loan modification, whether or not the borrower has been found eligible.

**CLASS ACTION COMPLAINT**

43.     HAMP and its associated directives also set prohibitions against certain conduct including demanding upfront payments in order to be evaluated for a loan modification, instituting or continuing foreclosures while a borrower is being evaluated for a loan modification, assigning a single point of contact, maintaining an adequate level communication with borrowers, maintaining proper caseload to ensure HAMP objections are met, and restrictions on the way a servicer may report the borrower to credit reporting agencies.

44.     Defendant Shellpoint has systematically, both intentionally and negligently, failed to comply with the terms of the HAMP directives and has regularly and repeatedly violated several of its prohibitions.

45.     Defendant Shellpoint and their agents have failed to comply with the terms of the HAMP directives and have regularly and repeatedly violated several of its prohibitions.

46.     Rather than allocating adequate resources and working diligently to reduce the number of loans in danger of default by establishing permanent modifications, Defendant Shellpoint has serially strung out, delayed, and otherwise hindered the modification processes.  Defendant Shellpoint's delays and obstruction tactics have taken various forms with the common result that homeowners with loans serviced by Defendant Shellpoint, who are eligible for permanent loan modifications, and who have met the requirements for participation in HAMP, have not received permanent loan modifications to which they are entitled.

47.     Despite Plaintiff's efforts, Defendant Shellpoint has ignored its contractual obligation to modify Plaintiff and Class Members' loans permanently.

48.     Because Defendant Shellpoint is not honoring its contractual obligations, Plaintiff and Class Members were and continue to be deprived of an opportunity to cure the delinquencies, pay the mortgage loan, and save their homes.  By failing to live up to its obligations under the terms of Treasury Department guidelines, and the Loan Documents, Defendant Shellpoint has left Plaintiff and Class Members worse off than they were before

1    they sought a modification from Defendant Shellpoint.

2         49.     Defendant Shellpoint's actions violate their contractual obligations, thwart

3    the purpose of HAMP, and are unfair and deceptive under California law.

4    _California Homeowner Bill of Rights Violations_

5         50.     In the summer of 2012, California Governor Jerry Brown signed into the law

6    the final components of Assembly Bills and Senate Bills, Senate Bill 1474, Assembly Bill

7    2610, and Assembly Bill 2610 that finalized California's Homeowner Bill of Rights

8    ("HBOR").  The full California panoply of this new homeowner protection laws took effect

9    on January 1, 2013, and were codified in California Civil Code § 2923 et seq. (various parts

10   of the HBOR were in full force and effect prior to January 1, 2013).

11        51.     Key provisions applicable to this case under the California's Homeowner Bill

12   of Rights include:

a.  HBOR continued the existing requirement that a servicer may not record a notice of default (NOD) until 30 days after contacting (or attempting to contact) the borrower to discuss possible alternatives to foreclosure.  California Civil Code §§ 2923.5(a) & 2923.55(a) (2013).

b.  Servicers must alert borrowers that they may request documentation demonstrating the servicer's authority to foreclose.  California Civil Code § 2923.55 (2013).

c.  Servicers are required to provide post-NOD outreach if the borrower failed to request a loan modification before an NOD was recorded.  California Civil Code § 2924.9 (requiring servicers that routinely offer foreclosure alternatives to contact the borrower within five days of the NOD recordation, explain those alternatives, and explain exactly how to apply).

d.  Large servicers must provide a single point of contact to borrowers.  California Civil Code § 2923.7 (2013); see _Lapper v. Suntrust Mortg., N.A._, 2013 WL 2929377, at *3 (C.D. Cal. June 7, 2013).

e.  If the borrower has submitted a complete loan modification application, HBOR prohibits the servicer from moving forward with the foreclosure process.  California Civil Code §§ 2923.6(c), 2924.18(a)(1) (2013) (applying to large and small servicers, respectively).

**CLASS ACTION COMPLAINT**

f.  Dual tracking protections apply to borrowers who had prior reviews.  The review could have occurred pre-HBOR. California Civil Code § 2923.6(g) (2013).

g.  Within five days of receiving a loan modification application, the servicer must provide borrowers with written acknowledgement of receipt that includes a description of the modification process, pertinent deadlines, and notification if documents are missing. California Civil Code § 2924.10 (2013).

h.  When an application is denied, the servicer must explain appeal rights, give specific reasons for investor-based denials, report NPV numbers, and describe foreclosure alternatives still available.  California Civil Code § 2923.6(f) (2013).

i.  Servicers may not proceed with the foreclosure until 31 days after borrower was notified of a denial, or 15 days after denying borrower's appeal. California Civil Code § 2923.6(e)(1)-(2) (2013).

j.  HBOR also provides protections for borrowers approved for a temporary or permanent loan modification or other foreclosure alternative. A servicer may not record an NOD as long as the borrower remains compliant with an approved loss mitigation plan. California Civil Code § 2924.11(a)(1) (2013).

k.  Enjoining a sale is still a remedy, but HBOR makes damages available even after a foreclosure sale.   California Civil Code § 2924.12 (2013) (large servicers); California Civil Code § 2924.19 (2013) (small servicers).

l.  HBOR's enforcement statutes explicitly allow for attorney's fees, even if the borrower obtained only preliminary injunctive relief.   California Civil Code §§ 2924.12 & 2924.19 (2013).

52.    Defendant Shellpoint and their agents have failed to comply with California's Homeowner Bill of Rights and have regularly and repeatedly violated several of its prohibitions against Plaintiff and the California Class.

*As to Plaintiff, Failed Loss Mitigation Efforts*

53.    Plaintiff has reached out to Defendant Shellpoint and its predecessor as far back as 2012, desiring to secure loss mitigation assistance with Plaintiff's loan.  Plaintiff provided all necessary loss mitigation applications to Defendant Shellpoint and its predecessor with submission of complete loan modification packets, fully executed with

**CLASS ACTION COMPLAINT**

full documentation, particularly on 1-2-13; 5-31-13; 7-29-13; 11-7-13; and 4-15-14. Additionally, Plaintiff has submitted supplemental documentation on numerous occasions to no avail.

54.     In each case, Plaintiff complied with the instructions of Shellpoint and predecessor by resubmitting documents, full set of loss mitigation applications, and more only to be ignored while without any determination or eligibility being rendered and with the foreclosure activity continuing.  All along this process, Defendant Shellpoint and predecessor continued to impose late charges, inspection fees, interest, costs, advances, and more.

55.     Defendant Shellpoint knew at the time of requesting documentation that Plaintiff had already provided or that Plaintiff's documentation was not needed but made such requests to mislead Plaintiff.  In fact, Defendant Shellpoint had all the documents for the loan modification.  There was no good reason to request documents over and over other than to harass and oppress Plaintiff was a malicious act.

**VIII.   CLAIMS FOR RELIEF**

**COUNT 1**

**FRAUD – INTENTIONAL**

**(For National Class Members)**

56.     Plaintiff incorporates here each and every allegation set forth above and in this Complaint.

57.     Defendant Shellpoint represented to Plaintiff and Class Members through publications, including its corporate website, that Defendant Shellpoint would assist them with a loan modification to keep their homes through HAMP, but not limited to, and that Plaintiff and Class Members would be approved for a loan modification upon eligibility.

58.     Plaintiff and Class Members submitted all required documents for loan modifications, including supplemental resubmission, submitted one or more Modification Packets, and were assured a prompt review by Defendant Shellpoint.

59.     Defendant Shellpoint requested documentation from Plaintiff and Class Members that was not required to make a determination of eligibility in order to delay, vex,

**CLASS ACTION COMPLAINT**

1    an otherwise harass Plaintiff.  These actions occurred within the statutory period under the

2    applicable statute of limitations.

3        60.    Plaintiff and Class Members either never received a determination of

4    eligibility, received a wrongful denial, or receive an eligibility notice but then Defendant

5    Shellpoint failed to carry out the administrative functions to provide a permanent loan

6    modification.

7        61.    Defendant Shellpoint failed to assess Plaintiff's situation properly and

8    Defendant Shellpoint failed to comply with HAMP.

9        62.    During this period of requiring Modification Packets or supplement

10   information, Defendant Shellpoint knew that the representations of needing addition

11   information or the willingness to help with loss mitigation was false when made, or that

12   these representations were made with reckless disregard for the truth.

13       63.    Defendant Shellpoint intended that Plaintiff and Class Members rely on these

14   representations.

15       64.    Plaintiff and Class Members reasonably relied on said representations by not

16   investigating, selecting or securing alternative methods to deal with her mortgage

17   delinquency believing that Defendant Shellpoint would honor its representation not to

18   foreclose and complete the loan modification.

19       65.    As a result of Plaintiff's and Class Members' reliance, Plaintiff's and Class

20   Members' were harmed and suffered damages.  Plaintiff's and Class Member's reliance on

21   Defendant Shellpoint's false representations was a substantial factor in causing Plaintiff

22   and Class Member's harm.

23                              **COUNT 2**

24                        **FRAUD – INTENTIONAL**

25                    **(For California Class Members)**

26       66.    Plaintiff incorporates here each and every allegation set forth above and in

27   this Complaint.

28   ////

**CLASS ACTION COMPLAINT**

67.     Defendant Shellpoint represented to Plaintiff and California Class Members through publications, including its corporate website, that Defendant Shellpoint would assist them with a loan modification to keep their homes through HAMP, and the California Homeowner's Bill of Rights, but not limited to, and that Plaintiff and California Class Members would be approved for a loan modification upon eligibility.

68.     Plaintiff and California Class Members submitted all required documents for loan modifications, including supplemental resubmission, submitted one or more Modification Packets, and were assured a prompt review by Defendant Shellpoint.

69.     Defendant Shellpoint requested documentation from Plaintiff and California Class Members that was not required to make a determination of eligibility in order to delay, vex, an otherwise harass Plaintiff.  These actions occurred within the statutory period under the applicable statute of limitations.

70.     Plaintiff and California Class Members either never received a determination of eligibility, received a wrongful denial, or receive an eligibility notice but then Defendant Shellpoint failed to carry out the administrative functions to provide a permanent loan modification.

71.     Defendant Shellpoint failed to assess Plaintiff's situation properly and Defendant Shellpoint failed to comply with HAMP and the California Homeowners Bill of Rights.

72.     During this period of requiring Modification Packets or supplement information, Defendant Shellpoint knew that the representations of needing addition information or the willingness to help with loss mitigation was false when made, or that these representations were made with reckless disregard for the truth.

73.     Defendant Shellpoint intended that Plaintiff and California Class members rely on these representations.

74.     Plaintiff and California Class Members reasonably relied on said representations by not investigating, selecting or securing alternative methods to deal with her mortgage delinquency believing that Defendant Shellpoint would honor its

**CLASS ACTION COMPLAINT**

representation not to foreclose and complete the loan modification.

75. As a result of Plaintiff and California Class Members' reliance, Plaintiff and California Class Member's were harmed and suffered damages. Plaintiff and California Class Members' reliance on Defendant Shellpoint's false representations were a substantial factor in causing Plaintiff and California Class Members' harm.

**COUNT 3**

**EQUITTABLE ESTOPPEL**

**(For All Class Members)**

76. Plaintiff incorporates here each and every allegation set forth above and in this Complaint.

77. Defendant Shellpoint's willful policy and practice of misleading borrowers that Defendant Shellpoint would provide loss mitigation assistance with a loan modification when unwilling, unprepared, or otherwise, unable misled Plaintiff and Class Members.

78. As a result of Defendant Shellpoint's actions, Plaintiff and Class Members could have avoided late fees, interest, penalties, inspection fees, and other charges by not misleading Plaintiff and Class Members from securing other forms of relief. Defendant Shellpoint should be equitably estopped from retaining any amounts collected from Plaintiff and Class Members that resulted from this false and misleading information given to Plaintiff and the Class Members.

79. Plaintiff and Class Members are therefore entitled to recover such amounts that were collected and retained by Defendant Shellpoint.

**COUNT 4**

**WRONGFUL FORECLOSURE**

**CALIFORNIA CIVIL CODE §§ 2923.6(c)**

**(For California Class Members)**

80. Plaintiff and California Class Members incorporate here each and every allegation set forth above and in this Complaint.

///

**CLASS ACTION COMPLAINT**

81.     Plaintiff and California Class Members alleges that Defendant Shellpoint have ignored to follow California's Homeowner Bill of Rights, California Civil Code §§ 2923.6(c) (2013) (applying to large and small servicers, respectively)**,** which essentially state that when a borrower has submitted a complete loan modification application, HBOR prohibits the servicer from moving forward with the foreclosure process.

82.     Here, Defendant Shellpoint has moved forward with the foreclosure process despite one or more fully completed Modification Packets being submitted during all applicable statute of limitation periods.  Each Modification Packet submission represents a complete submission of a loan modification application with follow up document submissions after Plaintiff made contact to ensure all documents were in order.  Despite having a complete loan modification application packet, Defendant Shellpoint failed to properly process the Modification Packet and proceeded with foreclosure activity against Plaintiff and California Class Members in direct violation of the dual tracking provisions of the California Homeowner Bill of Rights.

83.     Further, Defendant Shellpoint provided no written determination of approve or non-approval, no notice to Plaintiff and California Class members, or erroneous notice, and no outline of the factors considered with information about appeal.

84.     Plaintiff has suffered harm from as a result of Defendant Shellpoints' actions.

85.     Plaintiff is entitled to all available injunctive remedies, damages, attorney fees as a result of these actions.

86.     WHEREFORE, Plaintiff prays for relief as set forth below in the Prayer.

## COUNT 5

## BREACH OF CONTRACT AND BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING – DEED OF TRUST

### (Against All Class Members)

87.     Plaintiff incorporates here each and every allegation set forth above and in this Complaint.

88.     Defendant Shellpoint prosecutes foreclosure activity against Plaintiff and

**CLASS ACTION COMPLAINT**

GT | THE GORSKI FIRM | A PROFESSIONAL LAW CORPORATION

California Class Members in violation of HAMP and California Homeowner Bill of Rights, and as such, Defendant Shellpoint violates the terms of the deed of trust, which generally carried uniform provisions or similar text, providing for compliance with the applicable law and providing that the power of sale may only be exercised in compliance with applicable law.

89.     Plaintiff and Class Members by properly submitting a Modification Packet would cure all monetary defaults, if any, and be in compliance with the deed of trust.

90.     Notwithstanding any potential default by Plaintiff and Class Member related to monetary payments, Defendant Shellpoint wrongful failure to provide a loan modification has breached the deed of trust by assessing Plaintiff and Class Members unnecessary fees, including late charges, inspection fees, interest, penalties, foreclosure fees, unidentified fees for corporate advances, and more, and thus, breaching the terms of the deed of trust requiring that only appropriate fees may be charged.

91.     In addition, these forced upon fees and illegal prosecution of foreclosure activity constitutes a breach of the covenant of good faith and fair dealing.

92.     Plaintiff and Class Members have suffered harm and are threatened with additional harm from Defendants' breach and foreclosure actions.     Had Defendant Shellpoint complied with loss mitigation requirements, Plaintiff and Class members would never have needed to file this Complaint and endured emotional distress, financial despair, and harm to Plaintiff's physical well being.

93.     WHEREFORE, Plaintiff prays for relief as set forth below in the Prayer.

## COUNT 6

## UNJUST ENRICHMENT

### (For All Class Members)

94.     Plaintiff incorporates here each and every allegation set forth above and in this Complaint.

///

///

**CLASS ACTION COMPLAINT**

95.     By virtue of the egregious and illegal acts of Defendant Shellpoint as described in this Complaint, Defendant Shellpoint has been unjustly enriched in an amount to proven at trial.

96.     Defendant Shellpoint's retention of monies gained through its deceptive business practices, breaches, intentional bad actions, and otherwise would serve to unjustly enrich Defendant Shellpoint and would be contrary to the interests of justice.

97.     Defendant Shellpoint was enriched by charging unnecessary fees, such as inspection fees, non-judicial foreclosure fees, interest, late charges, penalties, and by running the clock on the non-judicial foreclosure process.  The gains made by Defendant Shellpoint increased its earnings and profits.

98.     WHEREFORE, Plaintiff prays for relief as set forth below.

## COUNT 7

## NEGLIGENCE

### (For All Class Members)

99.     Plaintiff incorporates here each and every allegation set forth above and in this Complaint.

100.    At all times relevant herein, Defendant Shellpoint, acting as Plaintiff and Class Members' servicer had a duty to exercise reasonable care and skill in performing their duties for the benefit of Plaintiff, their principal, in servicing the loan.  "Several recent federal cases have correctly found a duty of care arising from modification negotiations where a lender promises a modification..." *Jolley v. Chase Home Fin., LLC.*, 213 Cal. App. 4th 872 (2012); *Yau v. Deutsche Bank Nat'l Trust Co., N.A.*, 2013 WL 3296265 (C.D. Cal. June 21, 2013): On remand from the Ninth Circuit (*Yau v. Deutsche Bank Nat'l Trust Co. Am.*, 2013 WL 2302438 (9th Cir. May 24, 2013)), the district court reconsidered borrower's negligence claims in light of *Jolley v. Chase Home Fin., LLC*, 213 Cal. 4th 872 (2013).

101.    In taking the actions alleged in this Complaint, and in failing to take the actions alleged in this Complaint, Defendant Shellpoint, breached its duty of care and skill

THE
GORSKI
FIRM
A PROFESSIONAL LAW CORPORATION

1  to Plaintiff and Class Members in the servicing the loan and providing loss mitigation

2  options under HAMP, California Homeowner Bill of Rights, or under the Loan Documents,

3  by among other things, failing to supervise, inducing Plaintiff to improperly sign

4  documents by means of false representations, suppressions and concealments, failure to

5  counsel, failure to inform and explain, charging excessive, unconscionable fees, preparing

6  false financial statements, presenting Plaintiff and Class Members HAMP loan

7  modification applications that Plaintiff and Class Members submitted to Defendant

8  Shellpoint in full compliance and complete only to have Defendant Shellpoint lose

9  documents, fail to follow HAMP Guidelines, California Homeowner Bill of Rights, or Loan

10  Document requirements, and otherwise, thwart Plaintiff's ability to be eligible for a loan

11  modification.

12      102.    Because Defendant Shellpoint serviced the loan for Plaintiff and Class

13  Members participated in the Home Affordable Modification Program designed to help

14  homeowners with loss mitigation options that can ultimately lead to a loan modification

15  and cure a default, or the California Homeowner Bill of Rights, Defendant Shellpoint took

16  on the duty or had a statutory duty to comply with said requirements by making a proper

17  determination of eligibility for a loan modification.  Despite one or more submissions for a

18  loan modification, Defendant Shellpoint failed to comply with HAMP guidelines,

19  California Homeowner Bill of Rights, or Loan Document requirements, and in doing so

20  breached its duty to make a proper determination of eligibility for a loan modification or

21  other loss mitigation programs.

22      103.    As a proximate result of the conduct of Defendant Shellpoint, as alleged in

23  this complaint, Plaintiff and Class Members were damaged in an amount to be proven at the

24  time of trial.

### COUNT 8

### VIOLATION OF UNLAWFUL, UNFAIR OR DECEPTIVE PRACTICES

### CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200

### (For All Class Members)

**CLASS ACTION COMPLAINT**

104.    Plaintiff incorporates here each and every allegation set forth above and in this Complaint.

105.    California Business and Professions Code § 17200 et seq., also known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any "unlawful, unfair, … or deceptive business act or practice" as well as "unfair, deceptive, untrue or misleading advertising."

106.    Defendant Shellpoint's conduct was unlawful in that violates:

a.  HAMP as described in the First and Fifth Counts;

b.  California Civil Code § 2923.6(c) as described in the Fourth Count; and

c.  California Homeowner Bill of Rights as described in the Second and Fifth Counts.

107.  Defendants conduct was unfair in that:

a.   Defendant Shellpoint illegally began and continue to prosecute foreclosure activity while  Plaintiff and Class Member were being consider for a loan modification, or after they were wrongfully denied;

b.  Defendant Shellpoint engaged in the uniform practice of requesting unnecessary documentation, seeking repetitive submissions of the same documents, and never rendering a decision and in doing so such activity provides the basis for an "unfair" inquiry and could deceive the public because it place burdensome requirements on Plaintiff and Class Members; and the public that served no purpose but to provide a basis for denying loss mitigation options, such as a loan modification; it failed to properly considers applicable Trial Period Plan before demanding or collecting amounts due; and

c.  Defendant Shellpoint failed to investigate claims of loss mitigation approvals or defects with the foreclosing documents or appropriateness of the parties foreclosing and in doing so such activity provides the basis for an "unfair" inquiry and could deceive the public because it place burdensome

**CLASS ACTION COMPLAINT**

requirements on Plaintiff and Class Members; and the public that served no purpose but to provide for the unlawful foreclosure activity to continue; and

108. As a direct and proximate result of Defendant Shellpoint's unlawful and unfair business practices, Plaintiff and Class Members; and the public have been injured in fact and have lost money or property due to, without limitation, the foreclosure process despite not being in default.

109. As a direct and proximate result of Defendant Shellpoint's unlawful and unfair business practices, defendants have been unjustly enriched and should be ordered to make restitution to Plaintiff and Class Members pursuant to California Business and Professions Code §§ 17203 and 17204.

110. The unlawful and unfair business practices of Defendant Shellpoint described herein present a continuing threat to Plaintiff and Class Members; and the public will not cease doing so unless and until forced to do so by this Court. Defendant Shellpoint's conduct is causing and will continue to cause irreparable injury to Plaintiff and Class Members; and the public unless enjoined or restrained.

111. Plaintiff and Class Members seeks restitution and injunctive relief pursuant to California Business and Professions Code § 17203, including but not limited to: an Order requiring that Defendant Shellpoint correct their accounting of the loan and their reporting of the loan to the credit reporting agencies; restitution of wrongful charges of fees and interest on the loan; and such other and further relief as the Court may deem proper and just.

112. Plaintiff and Class Members further seeks restitution, disgorgement of sums wrongfully obtained, costs of suit, reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

113. Plaintiff and Class Members are entitled to an award of damages and disgorgement of profits in an amount to be proven at the time of trial.

114. WHEREFORE, Plaintiff prays for relief as set forth below in the Prayer.

///

**CLASS ACTION COMPLAINT**

## IX. **PRAYER FOR RELIEF**

WHEREFORE, for reason of the foregoing, Plaintiff and Class Members respectfully pray judgment as follows as to all Counts:

a.  Actual and compensatory damages in an amount to be proven at the time of trial;

b.  Any and all statutory penalties;

c.  Include injunctive relief for enforcement of the final determination as prayed for above, and leave open the possibility that a temporary injunction may be requested as some point in this proceeding;

d.  That Plaintiff and Class Members be granted an accounting and obtain appropriate relief and judgments resulting from said accounting;

e.  That the Court make findings for an appropriate award of mandatory attorneys fees and costs and for any additional discretionary awards of same and enter judgment in accordance therewith;

f.  That the Court grant declaratory relief as is shown by the evidence and as determined by the Court as prayed for above;

g.  Punitive damages in the sum to be determined pursuant to federal law and pursuant to California Civil Code § 1780(a)(4) to punish the Defendant Shellpoint, and to deter others from the commission of like offenses;

h.  Return of any monies or property given by the Plaintiff and Class Members to anyone, including any Defendant Shellpoint, in connection with the transactions between Plaintiff and Class Members and Defendant Shellpoint;

i.  Civil penalties pursuant to California Business and Professions Code section 17206(a) in an amount to be proven at the time of trial;

j.  An order enjoining Defendant Shellpoint, and its agents, from engaging in the illegal, unfair and deceptive practices which are the subject of the Complaint;

k.  Attorney fees, including under the Deed of Trust, Promissory Note, or California Civil Code § 1717(a), California Homeowners Bill of Rights, but not limited to;

l.  Costs of suit herein incurred;

m. That the Court make any other findings of fact and conclusions of law and include them in writing in the final judgment along with any other judgments as are justified by the evidence and determined by the Court to be in accordance with the pleadings and/or evidence; and

n. Any other relief that this Court deems just and equitable.

Respectfully Submitted,

DATED:  September 25, 2014

THE GORSKI FIRM, APC

Vincent A. Gorski
Attorney for Plaintiff and Class Representative
Tejwant S. Bal

CLASS ACTION COMPLAINT